**CERTIFIED GROCERS OF ILLINOIS, INC., Plaintiff-Appellee,**

v.

**PRODUCE, FRESH & FROZEN FRUITS & VEGETABLES, FISH, BUTTER, EGGS, CHEESE, POULTRY, FLORIST, NURSERY, LANDSCAPE & ALLIED EMPLOYEES, DRIVERS, CHAUFFEURS, WAREHOUSEMEN & HELPERS UNION, CHICAGO AND VICINITY, ILLINOIS, LOCAL 703, et al., Defendants-Appellants.**

No. 86-2303.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 22, 1987.

Decided April 10, 1987.

James D. Jacobson, Griffith & Jacobson, Chicago, Ill., for defendants-appellants.

S. Richard Pincus, Fox & Grove Chtd., Chicago, Ill., for plaintiff-appellee.

Before EASTERBROOK and MANION, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

EASTERBROOK, Circuit Judge.

Article Ten of the collective bargaining agreement between Certified Grocers of Illinois, Inc. (the Employer), and the union representing its truck drivers (the Union) provides for the arbitration of "any difference ... between the Employer and the Union concerning any interpretation or application of any of the provisions of this Agreement". Article Eleven (2) of the agreement provides that if the Union or an accountant "certifies in writing after examination of the Employer's records" that the "Employer is violating the wage scale, hours of work, vacations, applicable fringe benefit funds' provisions, working conditions or other terms or conditions of employment, based upon the records", then "the Union shall be permitted all legal and economic recourse including the right to strike notwithstanding anything to the contrary contained in this Agreement or the Union may utilize the provisions of Article Ten."

The Employer uses the Union's members to haul food from its central warehouse to its stores. The Employer and the Union dispute the members' entitlement to the work of transporting food from suppliers to the warehouse. The Union concedes that suppliers may deliver food to the warehouse if the suppliers use their own employees but deny that suppliers may hire independent contractors to deliver or that the Employer may use independent contractors to pick up food from suppliers. The Union announced that unless the Employer acceded to its view of their agreement, its members would strike. The Employer responded with this suit under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, seeking an injunction pending arbitration. See *Boys Markets, Inc. v. Retail Clerks Union,* 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970); *Gateway Coal Co. v. United Mine Workers,* 414 U.S. 368, 381–82, 94 S.Ct. 629, 638–39, 38 L.Ed.2d 583 (1974). *Boys Markets* allows the entry of an injunction pending arbitration when the collective bargaining agreement contains a no-strike clause; *Gateway Coal* holds that a promise not to strike may be inferred from an arbitration clause.

This case is novel because the agreement contains both a broad arbitration clause and an explicit reservation of the right to strike in defined circumstances.

The district court ordered the parties to arbitrate the question whether Article Eleven(2) preserves the Union's right to strike over this dispute. The court also issued a preliminary injunction against the strike pending arbitration. The Union contests the propriety of this injunction, pointing out that the district court did not independently determine that Article Eleven(2) was inapplicable. In the absence of such a decision, the Union maintains, the agreement must be read as permitting the strike, so that the Norris-LaGuardia Act, 29 U.S.C. §§ 101–15, forbids the entry of the injunction. Only after the court decides—independently or in the course of enforcing a lawful arbitration award—that the Union has promised not to strike about the grievance may it enjoin the strike, the Union says. And in passing the Union protests the reference of the dispute to arbitration, saying that disputes within the scope of Article Eleven(2) may be arbitrated only at the Union's behest, not the Employer's.

This would be a difficult case if it were not moot. The district judge entered a preliminary injunction on July 8, 1986, and amended it on July 31 to require the arbitrator to decide the scope of Article Eleven(2) separately, and before reaching any other issue. The Union appealed under 28 U.S.C. § 1292(a)(1). While the appeal was pending, the arbitration proceeded. Only the Employer presented evidence. The arbitrator concluded that Article Eleven(2), which refers to wages, hours, and the like, does not deal with work-assignment disputes. The reference to inspection of the Employer's books by an accountant and the need for a formal certificate of non-compliance demonstrate, the arbitrator concluded, that Article Eleven(2) is concerned with secret departures from the provisions of the agreement—failure to fund pension plans as agreed, failure to compute hours of work accurately, and the like. Any broader reading, according to the arbitrator, would swallow the general rule expressed in Article Ten. The arbitrator added that the parties had handled work-assignment disputes under Article Ten in the past, demonstrating the parties' understanding of the agreement. This decision was rendered on September 25. The Union moved to vacate the award, and a hearing was held on October 24. The district judge stated in open court: "I believe that [the arbitrator's] decision is supported by the record, is not incorrect, and should be approved." On December 15, 1986, the court converted the preliminary injunction to a permanent injunction—this one based on an arbitral award rather than *Boys Markets*. The Union did not file a notice of appeal from the permanent injunction. The Union also abandoned the arbitration, informing the arbitrator that it would not appear in any further proceedings looking toward resolution of the dispute on the merits. On January 22, 1987, the arbitrator sent the parties his final ruling, concluding (in light of the Union's withdrawal): "there was no evidence that would warrant a finding by the arbitrator that [the Employer] had engaged in conduct that violated the agreement." The Union has not challenged this award.

The appeal presents two questions: whether the court could enjoin the strike pending arbitration without independently ascertaining the scope of Article Eleven(2), and whether the underlying dispute is covered by Article Ten. The first of these questions is of no moment, now that the arbitrator has made an award. The injunction now is based on that award rather than the rationale of *Boys Markets*. The second of these questions affects the permanent injunction as well as the preliminary injunction, but the Union did not appeal from the entry of the permanent injunction. If we were to vacate the preliminary injunction, nothing would happen; the permanent injunction would remain in force, beyond this court's power now that the time to appeal has expired.

The preliminary injunction of July 6 had a natural limit. It lasted only until the arbitrator decided. Appeals from injunctions of this sort become moot when the contemplated event occurs. For example,

*Gjertsen v. Board of Election Commissioners,* 751 F.2d 199 (7th Cir.1984), dealt with an appeal from a preliminary injunction that addressed the conduct of a primary election. We held that the appeal became moot when the election occurred. The case itself was not moot, because a request for a permanent injunction was pending; yet we dismissed the appeal and told the parties they must save their contentions for appeal from the final decision. See also *Grano v. Barry,* 733 F.2d 164 (D.C. Cir.1984). When an order expires by its own terms, there is nothing to review. See *Donovan v. Robbins,* 752 F.2d 1170, 1173 (7th Cir.1985). This principle has led us to dismiss appeals from preliminary injunctions that have merged into permanent injunctions. E.g., *Peterson v. Brotherhood of Locomotive Firemen,* 268 F.2d 567, 568 (7th Cir.1959); *United States v. City of Chicago,* 534 F.2d 708, 711 (7th Cir.1976). The parties emphasized, in supplemental briefs filed at our request, that these two cases dealt with simultaneous appeals from preliminary and permanent injunctions, so that dismissal of the appeals from the preliminary injunctions left the court with something to review. True enough, but irrelevant. The holding of the cases is that only the permanent injunction matters, once it has been entered. The preliminary injunction no longer is the source of obligations; it cannot be reviewed, because it is gone. That is so whether or not anyone appeals from the permanent injunction. If the preliminary injunction is defunct, it is irrelevant and the appeal from it is not justiciable.

There are several potential ways around this conclusion. One is that an injunction bond may keep an appeal alive. *Stacy G. v. Pasadena Independent School District,* 695 F.2d 949, 955 (5th Cir.1983); but cf. *University of Texas v. Camenisch,* 451 U.S. 390, 393–95, 101 S.Ct. 1830, 1832–34, 68 L.Ed.2d 175 (1981). There was no bond in this case, however. A second is that a controversy may be capable of repetition but evade review because of its short duration. Injunctions against strikes pending arbitration may expire, as this one did, before they may be reviewed on appeal. The "evading review" doctrine applies only if there is "a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975). The Union's ability to strike under Article Eleven(2) about a work-assignment dispute has been clarified by the arbitrator's award, which has been enforced. As a result, in any future dispute the judge would rely on the arbitrator's definitive award rather than interpret the agreement anew. The dispute—what must the court do before learning the arbitrator's views?—will not recur between these parties.

Still a third possibility is that a "merger" of the preliminary into the permanent injunction enables the court to consider the propriety of the permanent injunction without the filing of a fresh appeal. This collides with the principle that the notice of appeal must follow rather than precede the decree complained of. See Fed.R.App.P. 4(a)(1); *United States v. Hansen,* 795 F.2d 35, 37–38 (7th Cir.1986). Notices of appeal may be filed after the "announcement" of a decision even though the decision has not been entered, Rule 4(a)(2), but that does not help the Union. The only notice of appeal was filed before the arbitrator released his opinion and therefore could not have been directed to the substance of the permanent injunction. *Hansen,* which deals with a similar premature notice of appeal, disposes of the claim that an appeal of an interlocutory order brings up subsequent appealable orders.

At all events, any "merger" of preliminary and permanent injunctions would present only the question whether the district judge was entitled to order arbitration under Article Ten. The briefs do not request review of "the merits" of the arbitrator's decision. The reference of this dispute to arbitration was proper. Article Ten is a comprehensive clause. Given the presumption in favor of arbitration, see *AT & T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 106 S.Ct. 1415, 1419–20, 89 L.Ed.2d 648 (1986), Article Eleven(2) simply gives the Union a right to

strike about the defined disputes (or not, at its option) while arbitration proceeds. So if there is anything before us for review, the district court did not err in ordering the parties to arbitrate the scope of the right to strike preserved by Article Eleven(2).

The dispute about the injunction pending arbitration is moot. *Gjertsen* holds that appeals from expired preliminary injunctions should be dismissed without vacating the underlying order. Accordingly, the appeal is dismissed as moot.